UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| LISA M. KNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:16-cv-00120-TAB-TWP |
| | ) | |
| NANCY A. BERRYHILL Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON PLAINTIFF'S BRIEF IN SUPPORT OF APPEAL**

**I.    Introduction**

Plaintiff Lisa M. Knight appeals the Commissioner's denial of her application for Social Security benefits. Knight argues that the Administrative Law Judge erred at step four by giving insufficient weight to the treating physician's opinion without adequately considering all the factors set forth in 20 C.F.R. § 404.1527(c). [Filing No. 10-2, at ECF p. 17.] For the reasons below, the Court denies Knight's brief in support of appeal [Filing No. 14] and affirms the Commissioner's decision.

**II.    Background**

Knight filed an application for disability insurance benefits alleging a disability onset date of February 13, 2009. The agency denied Knight's application initially and upon review. The ALJ held a hearing and issued a December 7, 2011, decision finding Knight was not disabled. Knight appealed, alleging in part that the ALJ erred by failing to provide an analysis of Dr. Dobbs' records and opinion. In April 2013, the Appeals Council granted Knight's request

for review, remanding the case to the ALJ to evaluate Dr. Dobbs' opinion and to correct an additional vocational issue. The ALJ held another hearing in September 2013.

On January 31, 2014, the ALJ again found that Knight was not disabled. At step one, the ALJ determined that Knight has not engaged in substantial gainful activity since the alleged onset date of February 13, 2009. At step two, the ALJ found Knight's severe impairments are psychogenic seizures, migraines, conversion disorder, posttraumatic stress disorder, and adjustment disorder with depressed mood. At step three, the ALJ concluded that these impairments do not meet or medically equal one of the listed impairments. At step four, the ALJ determined Knight has the residual functional capacity to perform sedentary work with the following limitations:

> [S]he can never crawl, balance, or climb ladders, ropes, or scaffolds; she can occasionally stoop, kneel, crouch; and she can climb ramps and stairs no more than 15% of the workday. She should avoid all use of dangerous machinery and all exposure to unprotected heights. She is limited to no commercial driving and must avoid working in close proximity to hot cooking surface, open flames, and open water hazards. She is limited to simple, routine, and repetitive tasks. She can interact with the public no more than approximately 15% of the workday, but with no transactional interactions such as sales or negotiations. She is limited to no more than occasional interaction with coworkers or supervisors. She is limited to jobs in which changes in the work setting occur no more than approximately 15% of the workday. She can perform goal-oriented work, but no constant production rate pace work such as automated assembly line work.

[Filing No. 10-2, at ECF p. 9-10.]

Based on this RFC, the ALJ found Knight is unable to perform any past relevant work. Relying on the testimony of a vocational expert, the ALJ found at step five that Knight can perform the work of an assembler, inspector, hand packager, and addresser. Thus, the ALJ concluded Knight is not disabled.

The Appeals Council denied Knight's request for review in April 2016, making the ALJ's conclusion the Commissioner's final decision. This appeal followed.

## III. Standard of Review

The Court must uphold the ALJ's decision so long as she supports her findings with substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011)). While the ALJ must consider all relevant medical evidence and avoid "cherry-picking" facts supporting a non-disability conclusion, she is not required to discuss every piece of evidence. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). The ALJ need only provide a logical bridge between the evidence and her conclusions. *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013).

## IV. Discussion

The only issue that Knight raises is whether the ALJ analyzed treating physician Dr. Dobbs' opinion according to the factors set forth in § 404.1527(c). If the ALJ determines that a treating doctor's opinion is not entitled to controlling weight, she must evaluate it and determine what weight to give it according to the factors set forth in § 404.1527(c)(2)-(6). *Roddy v. Astrue*, 705 F.3d 631, 637 (7th Cir. 2013). The factors are: (1) treatment relationship, (2) supportability, (3) consistency, (4) specialization, and (5) "other factors." 20 C.F.R. § 404.1527(c)(2)-(6). The ALJ's weight determination stands so long as the ALJ "minimally articulated" her reasons. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)). The only factors Knight challenges here are treatment relationship and consistency.

### A. Treatment relationship

First, Knight argues that the ALJ did not take the treatment relationship factor into account when weighing Dr. Dobbs' opinion. Specifically, Knight contends that the ALJ should

have considered that Dr. Dobbs saw Knight at least twenty times over a four-year period, from February 2009 to March 2013. [Filing No. 14, at ECF p. 4.]

In § 404.1527(c)(2), the treatment relationship factor contains two sub-parts: (1) length of relationship and frequency of examination and (2) nature and extent of relationship. 20 C.F.R. § 404.1527(c)(2). The first sub-part states, "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(c)(2)(i). The second sub-part refers to the depth of knowledge the treating source has about the patient's impairments, explaining, "We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories." 20 C.F.R. § 404.1527(c)(2)(ii). Generally, an ALJ may discount a treating source's opinion that is based entirely on the claimant's subjective complaints. *Loveless v. Colvin*, 810 F.3d 502, 507 (7th Cir. 2016).

The ALJ considered the first sub-factor. In her analysis, the ALJ described the various visits Knight made to Dr. Dobbs. The ALJ referred to Dr. Dobbs' treatment notes and Knight's visits using descriptions such as "recent," "later," and "subsequent." [Filing No. 10-2, at ECF p. 11, 12.] These chronological markers show the ALJ considered the length of Dr. Dobbs' treatment relationship and frequency of examining Knight. Additional indications that the ALJ considered this factor include the ALJ's analysis that: "Dr. Dobbs' treatment record has consistently referred to improved depression" and "the apparent lack of any significant complaints of pseudoseizures made to Dr. Dobbs over the last few years of treatment." [*Id.*, at ECF p. 13.] Thus, the weight given to Dr. Dobbs necessarily considered the length of time he treated Knight.

4

The ALJ considered the second sub-factor, the nature and extent of the relationship, and used its weakness to explain why she ultimately afforded little to no weight to Dr. Dobbs' opinion. Despite the length of time and frequency of examinations, the ALJ found a lack of depth in the nature and extent of the treatment relationship because Dr. Dobbs relied on Knight's subjective complaints for his opinion instead of objective medical evidence. For example, the ALJ pointed to Dr. Dobbs' "failure to provide a function-by-function analysis of the claimant's retained vocational abilities" as one of her reasons for discrediting his opinion. [Filing No. 10-2, at ECF p. 16.] Additionally, the ALJ pointed out that Dr. Dobbs never observed Knight having a seizure. [*Id.*, at ECF p. 11.] Therefore, Knight's argument that the ALJ did not consider Dr. Dobbs' treatment relationship fails. The ALJ's analysis demonstrates that she considered this factor when affording little weight to Dr. Dobbs' opinion. The ALJ minimally articulated her decision. Thus, this factor does not weigh in favor of remand.

**B.    Consistency**

Second, Knight argues that the ALJ omitted evidence that would make Dr. Dobbs' opinion more consistent with the record as a whole. Knight argues her seizures at St. Luke and University Hospitals as well as Dr. Hughes' neurology opinion are consistent with Dr. Dobbs' opinion. The Commissioner contends the ALJ found several inconsistencies between Dr. Dobbs' opinion and the evidence, including his own treatment notes, Knight's treatment history, and five other medical opinions that Knight is capable of working.

In § 404.1527(c)(4), the consistency factor is straightforward: "Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion." The ALJ may discount a treating source's opinion when it is inconsistent internally or with another consulting physician's opinion so long as she minimally articulates her

reasoning. *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

First, Knight argues that the ALJ ignored seizures that took place while Knight was hospitalized at St. Luke Hospital. However, Knight does not specify where in the nearly thirty pages of cited treatment notes the doctors at St. Luke record her having a seizure. [Filing No. 14, at ECF p. 4.] Knight might have been referring to a neurologic exam by Dr. Armitage on February 14, 2009, which noted, "When I came in the room, she was having what has been, her family thinks, seizures. The type of activity is usually considered conversion reaction and not true seizures." [Filing No. 10-7, at ECF p. 15.] Dr. Armitage explained that while he did not have a description of "all of the spells that she has had since she has been here which have been numerous," he recorded the aftereffects of each spell: "There was no postictal period.[1] She was awake and alert immediately." [*Id.*]

Even if the ALJ included evidence from St. Luke Hospital in her analysis, the fact that Dr. Armitage noted no postictal period after Knight's "severe spell" would support the ALJ's conclusion that Dr. Dobbs' assessment of her recovery time is inconsistent with other medical evidence on the record. Knight does not point to specific evidence from her stay at St. Luke Hospital that conflicts with Dr. Armitage's assessment or the ALJ's conclusion, and she does not explain how this evidence might support Dr. Dobbs' opinion. These treatment notes do not affect the ALJ's decision. This argument therefore fails.

---

[1] The postictal period is "the time between the end of the seizure and the return to baseline mental status" during which patients may experience issues such as confusion, drowsiness, or memory loss. The Washington Manual of Medical Therapeutics, *Seizures*, Unbound Medicine, Inc. (June 28, 2017), https://www.unboundmedicine.com/washingtonmanual/view/Washington-Manual-of-Medical-Therapeutics/602281/all/Seizures.

Next, Knight argues that the ALJ failed to consider seizures that took place during a neurologic exam at University Hospital. [Filing No. 14, at ECF p. 4.] However, the ALJ cited the University Hospital record describing a seizure incident. The ALJ explained that "as opposed to the claimant's testimony describing significant residual issues following a seizure that last for several subsequent hours, the emergency room physician observed no indication of postictal symptoms following this event." [Filing No. 10-2, at ECF p. 12 (quoting Filing No. 10-7, at ECF p. 28).] Additionally, the ALJ determined this lack of a postictal period is consistent with other evidence on the record, including a March 2009 treatment note from Dr. Dobbs that Knight feels reoriented after just one to two minutes following a pseudoseizure. [Filing No. 10-2, at ECF p. 12 (quoting Filing No. 10-7, at ECF p. 47).] The ALJ included the University Hospital notes in her analysis and used them to support her conclusion. Therefore, this argument fails.

Finally, Knight argues that the ALJ should have found that Dr. Hughes' neurology opinion supports Dr. Dobbs' opinion. However, this argument is undeveloped and does not point the Court to any evidence supporting Knight's position. Moreover, Dr. Hughes saw Knight only once, and the ALJ was not required to give controlling weight to his opinion. Therefore, this argument fails.

The ALJ analyzed the evidence to support her decision to reject Dr. Dobbs' opinion. The ALJ discussed the inconsistencies between Dr. Dobbs' opinion, Knight's testimony, and the medical record. Knight fails to convince the Court that the evidence makes Dr. Dobbs' opinion more consistent with the record as a whole.

7

## V. Conclusion

For these reasons, Knight has not demonstrated that the ALJ committed reversible error. The Court denies Knight's brief in support of appeal [Filing No. 14] and affirms the Commissioner's decision.

Date: 6/29/2017

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

William Joseph Jenner
JENNER, PATTISON, SUTTER & WYNN, LLP
jjenner@wjennerlaw.net

Cristen Elizabeth Meadows
SOCIAL SECURITY ADMINISTRATION
cristen.meadows@ssa.gov

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov